IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CONVOLVE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 2:08-cv-244 |
| | § | |
| DELL INC., | § | JURY TRIAL DEMANDED |
| WESTERN DIGITAL CORPORATION, | § | |
| HITACHI GLOBAL STORAGE | § | |
| TECHNOLOGIES, INC., and | § | |
| HITACHI LTD., | § | |
| | § | |
| Defendants. | § | |

**DELL'S REPLY IN SUPPORT OF DEFENDANTS' TRIAL BRIEF ON LACHES**

Dell files this reply in support of Defendants' Trial Brief on Laches and in support of the bench trial on laches on July 26, 2011.

### A. There is No Legitimate Excuse for Convolve's Delay

In its Response, Convolve can still provide no *legitimate* excuse for its failure to sue Dell from May 18, 2004 until June 18, 2008. As this Court recognized, the basis for Convolve's infringement case at trial is the automatic acoustic management ("AAM") standard. Trial Tr. 7/22/11 Aftn. 131:14-17. Yet Convolve knew about the AAM standard before the '473 patent was issued, and Convolve told the T13 Committee within a month after issuance that the patent covered the AAM standard. PTX-369; PTX-68. Moreover, Convolve's expert testified that a person of ordinary skill in the art, having knowledge of the AAM standard and the '473 patent, would consider infringement "a serious issue that one would need to investigate" promptly. Trial Tr. 07/18/11 Morn. 140:8-9. And if Convolve, consistent with its own expert's testimony, had investigated this "serious issue," the investigation would not have taken years, but only mere months, at best. Indeed, Convolve sued Seagate only two months after the issuance of the patent, Trial Tr. 7/20/11 Morn. 68:21-70:2, confirming that years of analysis by Convolve were not necessary to file a lawsuit against either a computer manufacturer or a hard-drive manufacturer.

But even if Convolve's obligation to investigate did not arise in 2001 when the patent issued, Convolve actually knew at least by May 18, 2004, when Mr. Tanquary viewed the BIOS setup screen on his Dell computer, that Dell was implementing AAM. Trial Tr. 7/19/11 Morn. 137:17-138:10. Because Mr. Tanquary knew of Dell's support for AAM from a simple review of Dell's BIOS setup screen, Convolve knew in minutes or hours—not years—that Dell had the basis for Convolve's infringement allegation at trial.

Convolve's suggestion that Dell concealed Dell's AAM support is contradicted by the record. Dell's support for AAM is apparent from its manuals, Trial Tr. 7/18/11 Morn. 145:4-24

(describing PTX-0243), entries on its web site, PTX-0296, and the BIOS setup screen itself, Trial Tr. 7/18/11 Morn. 130:24-131:7. All of this was publicly available and plainly indicated that Dell computers supported AAM. That Dell did not tout AAM support in its *advertisements* before or after May 18, 2004, is not relevant. There is no requirement that an accused infringer advertise the allegedly infringing feature before laches is appropriate. Instead, the record in this lawsuit shows that Convolve independently determined that Dell supported AAM in 2004 as a result of looking at the BIOS setup screen, Trial Tr. 7/19/11 Morn. 137:17-138:10, and that Convolve failed to act on that knowledge for four years. That is enough.

Nor does Convolve's involvement in the New York lawsuit and reexaminations excuse Convolve's delay. Contrary to Convolve's suggestion (at 13), it is not enough to know of another lawsuit on the same patent. The Federal Circuit has stated that "[w]hat is important is whether [the defendant] had reason to believe *it* was likely to be sued." *Vaupel Textilmaschinen v. Meccania Euro Italia*, 944 F.2d 870, 878 (Fed. Cir. 1991) (emphasis added). Here, Convolve has not shown and cannot show that Dell believed it was likely to be sued before June 18, 2008. And the record shows the opposite: Dell purchased hard-disk drives from at least six other suppliers between 2001 and 2008 (Seagate, IBM, Western Digital, Hitachi, Fujitsu, Toshiba, and Samsung), Trial Tr. 7/22/11 Aftn. 99:16-24, and only one of those suppliers, Seagate, had ever been accused of infringing the '473 patent before June 18, 2008. Because Dell's suppliers, other than Seagate, were supplying AAM-compliant drives and were not accused by Convolve, it was reasonable for Dell to believe that its suppliers could and did provide AAM-compliant drives that performed the critical "input shaping" steps within the drive in a non-infringing way. Only Seagate appeared to have a problem with Convolve. And when Convolve finally sued Dell, Convolve was careful to tailor its lawsuit to *exclude* Seagate drives from the case, confirming

that Convolve was accusing Dell on the basis of hard-disk drives from suppliers that Convolve knew of for years. In fact, if Dell had become aware before June 2008 that it was likely to be sued—such as through a notice letter *from Convolve*—Dell would have taken the same action it took after the lawsuit was filed: the removal of the accused feature from Dell's products.

### B. Dell Has Suffered Economic Prejudice

Dell has also been economically prejudiced by Convolve's delay. The trial record leads to the obvious conclusion that Convolve was aware that, if Convolve sued Dell for infringement, Dell would remove the acoustic management feature from Dell products—just as Compaq and Seagate had done, and just as Dell did for its remaining AAM-supported products in 2009 shortly after Dell received Convolve's infringement contentions. On these facts, it is apparent that Convolve was aware that a delay in filing suit would increase Dell's exposure, while speed in filing suit would diminish Dell's exposure. Accordingly, acting in its own self-interest, Convolve delayed in bringing this lawsuit—and in providing Dell with any pre-lawsuit notice of infringement—so that Dell's exposure would increase to Convolve's benefit.

This is not merely a case of increased monetary losses due to a finding of liability. AAM support can readily be disabled without affecting customer expectations or demand, and this fact has been proved by the history of this case and the New York case: After being sued by Convolve, Compaq removed AAM support from its BIOS. Trial Tr. 07/25/11 Aftn. 64:1-3. And in 2006, Dell removed AAM support from consumer computers and received no customer complaints about the feature's removal. Trial Tr. 7/20/11 Aftn. 61:23-63:3, 113:8-19. Shortly after Convolve identified the Dell BIOS in Convolve's infringement contentions in this case, moreover, Dell removed AAM support from the BIOS for all of the non-consumer computers that still included the feature. Trial Tr. 7/20/2011 Aftn. 60:14-61:15. Again, no customer noticed or complained to Dell. Trial Tr. 7/20/2011 Aftn. 114:10-17. Had Convolve accused the

Dell BIOS of infringement sooner, Dell would have removed the feature sooner.

The Federal Circuit has stated that economic damages may exist "where an infringer, if he had had notice, could have switched to a noninfringing product." *See A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992) (*citing Rome Grader & Mach. v. J.D. Adams Mfg. Co.*, 135 F.2d 617, 619 (7th Cir. 1943)). The facts of this case show that Dell not only *could have* switched to a noninfringing product, but that Dell, like Compaq, *would have* done so if Convolve had made an allegation of infringement sooner. As the trial record demonstrates, of the 45 million accused Dell computers in this lawsuit, only 3.8 million were sold after June 18, 2008. Trial Tr. 7/21/11 Aftn. 48:11-23; Trial Tr. 7/25/11 Aftn. 48:18-49:1. Because Dell could have switched to non-infringing products years before Convolve filed this lawsuit, Dell has suffered economic damages as set out in *Aukerman*.

### C.     The Jury Verdict Does Not Make Laches Moot

The jury's verdict basing damages on a lump-sum royalty does not make laches moot, for two independent reasons. First, the jury's lump-sum royalty necessarily assumed that Dell would have purchased a license for the entire life of the patent. Under Federal Circuit precedent, that is the standard assumption when a lump-sum royalty is awarded under a "hypothetical negotiation" analysis. *See. e.g.*, *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1565 (Fed. Cir. 1984) (lump sum royalty award is for the life of the patent and eliminates any future damages or other relief). And the opinions offered by Defendants' damages witnesses were consistent with that assumption: each testified that the lump-sum royalty would be a "paid-up" license for the life of the patent. Trial Tr. 7/25/11 Aftn. 35:17-36:2 (Bakewell), 89:13-16 (Slottje), 105:11-106:12 (Ugone). Yet, as previously shown, the record establishes that Dell would *not* have needed a license for the life of the patent, because it would simply have eliminated the AAM feature if confronted with an actual allegation of infringement.

Given the hypothetical negotiation construct, Dell could not ask the jury to award a lump-sum royalty on the assumption that the license would last only for the few weeks necessary to make that change. But this Court, exercising its equitable authority under the laches doctrine, should adjust the lump-sum damage award downward to account for Convolve's delay in filing this lawsuit. Accordingly, the jury's damage award should be reduced by approximately 90% to reflect the fact that only about 10% of Dell's infringing computer sales (3.8 million out of 44.9 million) occurred after Convolve provided Dell with proper notice of Convolve's infringement allegations by filing this suit.

Second, Convolve's delay and Dell's resulting prejudice remain relevant to other pending issues. For example, whether Convolve is entitled to prejudgment interest depends on whether Convolve's delay in bringing this lawsuit was reasonable and whether Convolve's delay harmed Dell. *See Crystal Semiconductor v. Tritech Microelectronics*, 246 F.3d 1336, 1361-62 (Fed. Cir. 2001) (upholding denial of prejudgment interest where the plaintiff's two-year delay in suing was "self-serving and resulted in prejudice to the defendants"). Here, Convolve was aware that other accused infringers had removed the feature after being accused of infringement, Trial Tr. 7/19/11 Aftn. 145:19-23, leading to the obvious conclusion that a delay in bringing the lawsuit tended to extend the damages period to Convolve's benefit.

### D. Conclusion

Dell respectfully asks this Court to find laches. Because of the prejudice Dell suffered from Convolve's delay, Dell further requests that any damages award entered by the Court against Dell be reduced to no more than 10% of the jury verdict — or $150,000 — to reflect the proportion of accused products sold after May 18, 2008, to the total number of accused products. Dell further requests that the Court exercise its authority to reject any request by Convolve for an award of prejudgment interest.

Date:  August 12, 2011                    By:     */s/ Roger Fulghum*
                                                          Deron R. Dacus
                                                          Lead Attorney
Texas State Bar No. 00790553
Ramey & Flock, P.C.
100 East Ferguson, Suite 500
Tyler, Texas 75702
Telephone:  (903) 597-3301
Facsimile:  (903) 597-2413
E-mail:  ddacus@rameyflock.com

Roger Fulghum
Texas State Bar No. 00790724
Tammy Pennington Rhodes
Texas State Bar No. 24051182
Bradley Bowling
Texas State Bar No. 24040555
Baker Botts L.L.P.
One Shell Plaza
910 Louisiana
Houston, Texas 77002-4995
Telephone:  (713) 229-1234
Facsimile:  (713) 229-1522
E-mail: roger.fulghum@bakerbotts.com
E-mail: tammy.pennington@bakerbotts.com
E-mail: brad.bowling@bakerbotts.com

Michael C. Smith
Texas State Bar No. 18650410
Siebman, Burg, Phillips & Smith, LLP
P.O. Box 1556
Marshall, Texas 75671
Telephone:  (903) 938-8900
Facsimile:  (972) 767-4620
E-mail:  michaelsmith@siebman.com

Kimball R. Anderson
Kathleen M. Barry
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone:  (312) 558-5858
Facsimile:  (312) 558-5600
E-mail:  kanderson@winston.com

Gene C. Schaerr
Winston & Strawn LLP
1700 K Street NW
Washington, D.C.  20006
Telephone:  (202) 282-5845
Facsimile:  (202) 282-5100
E-mail:  gschaerr@winston.com

**ATTORNEYS FOR DELL INC.**

## **CERTIFICATE OF SERVICE**

       I hereby certify that the foregoing document was filed electronically on August 12, 2011, pursuant to Local Rule CV-5(a), and has been served on all counsel who are deemed to have consented to electronic service.

                                              */s/ Roger Fulghum*
                                              Roger Fulghum