IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CONVOLVE, INC. | § | |
| | § | |
| v. | § | Case No. 2:08-CV-244-RSP |
| | § | |
| DELL INC., et al. | § | |

**MEMORANDUM ORDER**

After a nine-day trial, the jury found that Plaintiff had proved that the asserted claims of

the '473 Patent were infringed. Before the Court is Dell's Renewed Motion for Judgment as a

Matter of Law on Non-Infringement (Dkt. No. 565, filed August 19, 2011, the "Motion") and

Dell's Renewed Motion for Judgment as a Matter of Law on No Willful Infringement (Dkt. No.

568, filed August 19, 2011, the "Willfulness JMOL").

**APPLICABLE LAW**

Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue

during a jury trial and the court finds that a reasonable jury would not have a legally sufficient

evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a) & (b). "The grant

or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent

law, reviewed under the law of the regional circuit in which the appeal from the district court

would usually lie." *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008).

Under Fifth Circuit law, a court is "especially deferential" to a jury's verdict, and will not

reverse the jury's findings unless they are not supported by substantial evidence. *Baisden v. I'm

Ready Productions, Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). A motion for judgment as a matter

of law must be denied "unless the facts and inferences point so strongly and overwhelmingly in

the movant's favor that reasonable jurors could not reach a contrary conclusion." *Id*. at 498

(citation omitted). In other words, "[t]here must be more than a mere scintilla of evidence in the

record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

The Court must review all evidence in the record, and draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* at 151 (citation omitted).

## DISCUSSION

Defendant moves for judgment as a matter of law that it does not infringe the asserted claims. (Mot. at 1.)

**Direct Infringement**

### 1. *Outputting Commands*

Dell alleges that it fails to meet any portion of the "outputting commands" limitation, but its argument is actually premised on two positions: first, that Convolve failed to show "transformation" of an input signal; and second, that Convolve failed to show a decrease in "chosen unwanted frequencies." (Mot. at 1; *cf.* Mot. at 8.)

Dell's first argument is unavailing. It relies in part, on Dr. DiEuliis' trial testimony:

Q. So are there different parameters in the Western Digital product that are used for mode 0, performance mode, and mode 3, the quiet mode?
A. There are different values of the parameters which are used. Just as I said, if I changed the 2 to a 4 in that calculation I gave you, you would get different numbers. That's -- that's what I'm talking about. There are different values of the parameters.
Q. And if you change the value of the parameter, does that change the shape of the input signal?

A. The calculation produces a different number each time, and that means that there's a different current sent to the VCM [voice coil motor] over the course of the seek, which means that the shape of the input signal has been changed … ."

(Trial Tr. 7/18/11 Aftn. at 39:15-40:4.)  Dell contends that Dr. DiEuliis' "assertion was mere wordplay," and that performing a calculation on an input signal to determine an output signal is not a "transformation", but instead "the generation of a completely different signal." (Dkt. 598 at 2.)  It is entirely unclear to the Court what Dell would consider a transformation, given that it also argues that filters and slew-rate limiting also do not necessarily suffice as a transformation. (*Id*. at 2-3.)  The Court finds that it was entirely reasonable for a jury to accept Dr. DiEuliis' position regarding the "transformation" requirement, as well as the other evidence presented on this point.  The only evidence Dell cites to counter this testimony is Dr. Buckman's conclusory statement that "Dell computers don't transform input signals."  (Dkt. 598 at 3, citing Trial Tr. 7/22/11 Aftn. at 116:25-117:1.)  Additionally, Convolve presented additional ways that the accused systems meet the "transformation" requirement. (*See, e.g*., Dkt. 588 at 4-5.)

Dell's next argument regarding "outputting commands" is that Convolve has failed to show "selection of unwanted frequencies."  In making this argument, Dell essentially demands that Convolve show an **explicit and intentional** selection command. (*See, e.g*., Mot. at 6-7, Dkt. 598 at 3.)  The Court first notes that it already addressed and rejected the essence Dell's position during the claim construction process:  "Further, the specification provides no support for a user intentionally choosing specific frequencies to reduce, and provides only a user interface where frequencies are chosen implicitly through preference for speed or quiet operation. Defendants' construction would thus exclude the embodiments of the specification. Accordingly, the Court rejects this

limitation to the claim." (Dkt. 211 at 29.) Convolve's position is essentially that by virtue of choosing the quiet mode, a user selects a particular frequency for reduction. Dell has provided no basis, in either the facts of this case or through case law, to conclude that a selection of a frequency is so narrow as to only be met by an explicit (presumably numerical) designation of a frequency. On the contrary, the Court finds that the jury's conclusion was reasonable and supported by the evidence presented by Convolve at trial. Similarly, Dell has failed to show that the jury had an insufficient evidentiary basis to support the remaining findings attacked in this motion, some of which are addressed in only summary, conclusory format. (Mot. at 8.)

### 2. *User Interface*

Dell also claims that Convolve failed to show that Dell directly performs the "user interface" limitation. Neither party disputes that, in accordance with the Court's claim construction ruling, the user interface at issue must be "accessible to an end user." Rather, Dell's arguments are actually targeted toward the "altering" and "outputting" steps. (*See* Mot. at 10, "[t]he Court's construction clearly requires the actions of an end-user to alter settings in the user interface.") For example, claim 7 states in part:

> altering settings in the user interface for one of the seek time and the acoustic noise level of the data storage device in inverse relation;

With respect to the "altering" step at issue here, Convolve argues that it can – and did – show that the Dell system can infringe that step without needing to include proof of an end-user performing the "altering" step. Dell misconstrues this position to mean that Convolve makes the argument that an end-user is not triggering the actions, but that is not what is argued by

Convolve. Rather, the crux of the issue here is whether the claim language recited in the "altering" and "outputting" steps can be met without requiring proof of a user's actions.[1]

The claim language recited in the "altering" and "outputting" steps does not recite action by an end user. In order to prove direct infringement of the "altering" step, for example, Convolve needed to prove that Dell's system "alter[s] settings in the user interface for one of the seek time and the acoustic noise level of the data storage device in inverse relation." Convolve does not appear to argue, as alleged by Dell, that an end-user is absolutely not involved at the origin of this command, but rather that such an end-user is not included in the actual language of the altering step, and thus, Convolve need not prove the involvement of an end-user in order to show that the limitation is met. Thus, while there is little dispute that an end user *might* be the one triggering a given action, the relevant question here is whether Dell's system performs the altering step.[2] At trial, Convolve presented evidence that Dell's systems do, in fact, alter settings in the manner described by claims 7 and 10. Dell essentially relies entirely on its "end user" involvement argument, and thus, fails to address the sufficiency of Convolve's evidence that the accused Dell systems perform all steps of the asserted claims. Nevertheless, the Court has reviewed the trial testimony and finds that a reasonable jury could have relied upon the evidence

---

[1] The Court notes that although it addresses this question independently here, a virtually identical argument was rejected during claim construction: "Defendants' proposed construction, however, goes too far. The negative limitation of Defendants' proposed construction would exclude a manufacturer that used the same interface accessible to the end user to configure its devices. The portion of the summary of the invention that Defendants use for support in their argument that the user interface must be accessible to an end user provides no support for their argument that manufacturers who use the same interface to configure their drives are absolved from infringement. Accordingly, the Court declines to add this limitation." (Dkt. 211 at 15-16.)

[2] Dell places a great deal of emphasis on the requirement of "end user accessibility." As noted above, there is no dispute between the parties that the "user interface" must – as required by the Court's claim construction – be accessible to an end user. Dell posits the question that unless the end user is performing the "altering" and "outputting" steps through the user interface, "why have a user interface at all?" (Dkt 596 at 4.) In doing so, Dell entirely misses the point –an end user might very well use the user interface to trigger the altering and outputting steps, but *the claim language does not include such a requirement*, and as such, the divided infringement problem Dell attempts to create is illusory.

at trial to find infringement of the claims addressed by Dell's JMOL. The evidence for claims 8, 9, 14, and 15 was similarly sufficient.

Accordingly, the Court finds that Dell has failed to show that that a reasonable jury would not have a legally sufficient evidentiary basis to find for Convolve on the issue of direct infringement of the asserted claims.

**Indirect Infringement**

        *1.     Knowledge of Infringement*

Dell contends that Convolve failed to show that Dell had knowledge of the asserted patent and knowledge that the induced acts constitute patent infringement. There is little reasonable dispute that sufficient evidence was presented for a reasonable jury to find that Dell was aware of Convolve and its technology generally. (*See, e.g.,* Dkt. 588 at 11-12.) Similarly, a substantial amount of evidence was produced at trial to suggest that Dell was aware of the asserted patent. (*Id.*) The remaining issue, then, is whether Dell had knowledge that the allegedly induced acts constitute patent infringement. Dell essentially asks this Court to require a smoking gun, and find that a jury is obligated to ignore a substantial amount of circumstantial evidence presented at trial. This Court declines to do so, and notes that while Convolve must prove knowledge that the induced acts constitute patent infringement, it is perfectly entitled to do so by presenting circumstantial evidence at trial. Convolve did so, by presenting evidence of internal Dell discussions regarding the litigation risk of implementing the technology in question, and also that Dell was aware of Convolve's position that the technology in question infringed its patents – a position that was proved correct at trial. (*Id.* at 13.) A jury may have reasonably relied on this evidence to find that Dell knew that the induced acts constituted patent infringement.

In its reply, Dell makes the argument that the evidence cited by Convolve is "relevant only to the possibility that Dell itself might be risking direct infringement when it implemented the AAM standard" and "[t]his evidence says nothing about infringement by Dell's customers." (Dkt. 598 at 5.) It is unclear to this Court how Dell contends it could be aware that performing a given set of acts would constitute infringement, explicitly instruct its customers to perform those acts, and then claim that it wasn't aware that those acts would constitute infringement on the part of its customers. A reasonable jury could infer from the evidence presented at trial that Dell had knowledge that its customers' acts would constitute infringement.

### 2.    *Substantial Non-Infringing Uses*

Dell claims that Convolve failed to show that the accused Dell products have no substantial non-infringing uses. In doing so, Dell urges the Court to analyze the hard-drives as a whole. Convolve, in turn, asks the Court to analyze the AAM firmware and code as the accused systems.

In support of its proposition, Dell cites *Hodosh v. Block Drug Co., Inc.*, 833 F.2d 1575, 1578 (Fed. Cir. 1987), alleging that it requires the Court to focus on "the thing sold" to determine whether substantial non-infringing uses exist. However, as Convolve notes, the Federal Circuit in *Ricoh Co., Ltd. v. Quanta Computer Inc.*, has addressed a similar interpretation of *Hodosh* to the one propounded by Dell, and found that "[i]t does not follow from *Hodosh* that the inclusion of a component with substantial noninfringing uses in a product that contains other components useful only to infringe a process patent can or should defeat liability for contributory infringement under § 271(c)." 550 F.3d 1325, 1339-1340 (Fed. Cir. 2008). In other words, an infringer cannot escape liability simply by packaging an infringing item with other non-infringing items. In reply, Dell cites *Fujitsu Ltd. v. Netgear Inc.*. However, in that case, the Federal Circuit's conclusion entirely supports Convolve's position: "[w]e agree … that the

component at issue here is the specific hardware and software that performs fragmentation." 620 F.3d 1321, 1330 (Fed. Cir. 2010). The *Fujitsu* Court also stated that "[w]hether a user activates fragmentation is relevant to the extent of direct infringement, but does not establish substantial noninfringing uses. Therefore, the undisputed facts establish that the fragmentation software does not have substantial noninfringing uses and we cannot affirm summary judgment of noninfringement on this basis." *Id*. at 1331.

Just as in *Fujitsu*, the AAM functionality here is a "separate and distinct feature" of a larger product, and Convolve's infringement case turned on that functionality. *Id*. at 1330-31. Convolve presented evidence to show that the AAM feature does not have substantial noninfringing uses, and Dell has not, and does not in its briefing, even attempt to rebut Convolve on this point, instead relying solely on its argument that the drives should be analyzed as a whole.

**Contributory Infringement**

Dell next contends that Dell computer systems are not a "component especially made or adapted for use in a way that infringes," because they are *systems*, and not *components*. (Mot. at 14-15.) The distinction drawn by Dell appears to this Court to be a purely semantic one, without any factual or legal basis. Convolve presented evidence at trial that Dell's computer systems were components especially made or adapted for use in a way that infringes, and this Court finds that the jury was reasonable to rely on that evidence to find that the asserted claims were contributorily infringed.

For the reasons set forth above, the Court holds that the jury's finding that Plaintiff met its burden of proving infringement was reasonable and supported by substantial evidence. Defendant Dell's motion for judgment as a matter of law on the grounds that the asserted claims are not infringed is DENIED.

**Willful Infringement**

Finally, Dell contends that Dell failed to establish willful infringement by clear and convincing evidence. To show willful infringement, "[a] patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Technology, LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*). Once the "threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *Id.* Since the close of initial briefing, the Federal Circuit issued a decision in *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 682 F.3d 1005, 1008 (Fed. Cir. June 14, 2012). *Bard* clarified the law with regard to willful infringement. Specifically, the *Bard* court "[held] that the objective determination of recklessness, even though predicated on underlying mixed questions of law and fact, is best decided by the judge as a question of law subject to *de novo* review." 682 F.3d at 1007-1008. The evidence presented at trial in this case shows that "a reasonable person would have considered there to be a high likelihood of infringement of a valid patent." *Id.* Accordingly, the Court finds that the objective prong is met.

The jury's finding that the subjective prong was met was supported by a plethora of evidence. (*See, e.g.*, Dkt. 589 at 3-5.) Accordingly, Dell has failed to show that the jury lacked a legally sufficient evidentiary basis on which to find for Convolve on the subjective prong.

Because the objective and subjective prongs of willfulness are both met, Dell's motion for judgment as a matter of law on the grounds that the asserted claims are not willfully infringed is DENIED.

**CONCLUSION**

Having found that Defendant is not entitled to judgment as a matter of law on the grounds raised in their motion and is not otherwise entitled to a new trial, Dell's Renewed Motion for Judgment as a Matter of Law on Non-Infringement (Dkt. No. 565) and Dell's Renewed Motion for Judgment as a Matter of Law on No Willful Infringement (Dkt. No. 568) are **DENIED**.

**SIGNED this 11th day of February, 2015.**


_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE