IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CONVOLVE, INC. | § | |
| | § | |
| v. | § | Case No. 2:08-CV-244-RSP |
| | § | |
| DELL INC., et al. | § | |

## MEMORANDUM ORDER

After a nine-day trial, the jury found that Plaintiff had proved that the asserted claims of the '473 Patent were infringed. Before the Court is Western Digital's ("WD") Renewed Motion for Judgment as a Matter of Law on Non-Infringement (Dkt. No. 570, filed August 19, 2011).

## APPLICABLE LAW

Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a) & (b). "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008).

Under Fifth Circuit law, a court is "especially deferential" to a jury's verdict, and will not reverse the jury's findings unless they are not supported by substantial evidence. *Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). A motion for judgment as a matter of law must be denied "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Id*. at 498 (citation omitted). In other words, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

The Court must review all evidence in the record, and draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* at 151 (citation omitted).

## DISCUSSION

Defendant moves for judgment as a matter of law that it does not infringe the asserted claims. (Mot. at 1.)

**Direct Infringement**

 *1.    User Interface*

WD first contends that there was not a reasonably sufficient evidentiary basis for the jury to find that the ATA interface used by the accused products constituted a "user interface." (Mot. at 4-7.) In doing so, WD contends that "the only examples of user interfaces disclosed in the '473 patent are a graphical user interface (GUI) and mechanical switches or jumpers." (*Id*. at 5.) The Court notes that it has previously declined to limit the "user interface" to the two narrow implementations proposed by WD, and instead construed that term to mean "control (e.g. software, hardware, firmware, or a combination thereof) accessible to the end user that allows a person to alter operational parameters." (Dkt. 211 at 17.)

WD adds that "Dr. DiEuliis' description that something else is needed to access the ATA interface only confirms that the ATA interface cannot *be* the required user interface. . . . The fact that DiEuliis had to point to some other user interface in order to access what he called a user interface highlights the absurdity of Convolve's position." (Mot. at 6.) This Court disagrees.

The mere fact that a computing system may require components additional to those recited in the claims to function as designed does not mean the existence of those external components must be proved to show infringement.[1] For example, even if the Court were to adopt WD's proposal of a "graphical user interface," a user would doubtlessly need some form of input device to interact with said graphical user interface – but that does not mean that Convolve would then be obligated to prove the existence of a mouse or keyboard to prove infringement. Rather, the touchstone is what is *actually recited by the claims*. Here, Convolve presented a sufficient evidentiary basis for a reasonable jury to find that the ATA interface at issue constituted control (e.g. software, hardware, firmware, or a combination thereof) accessible to the end user that allows a person to alter operational parameters.

### 2. Reduce Selected Unwanted Frequencies

WD also contends that the claim limitations requiring the reduction of "selected unwanted frequencies" are not met. (Mot. at 7.) WD essentially argues that its engineers only "tune for performance," not for the reduction of unwanted frequencies. (*Id*. at 8.) However, at trial Convolve presented evidence demonstrating acoustic testing of certain frequencies in each mode. (PTX-612; Dkt. 590 at 4.) WD's only response to this exhibit in its reply brief is that the document wasn't explicitly labeled "seek acoustic noise," but it is unclear why the lack of that exact phrase would require a jury to wholly discount the document. (Dkt. 596 at 3.) Convolve also presented evidence of a number of documents indicating acoustic specifications of drives that are to be sold to Dell. (PTX-348, PTX-457, PTX-494; Dkt. 590 at 4-5.) This circumstantial evidence, when paired with the other evidence presented by Convolve, constitutes a reasonable

---

[1] In contrast, what this Court found would not satisfy "accessible to an end user" was a situation in which an entirely distinct and separate device was necessary to make changes to the system: "[i]f, for example, an end user had to replace a ROM chip in order to alter settings, open the hard drive enclosure, or purchase a specialized device and write code to alter the drive's settings." (Dkt. 211 at 17.)

basis for a jury to conclude that because WD was a Dell hard drive vendor, it complied with Dell's requirements by reducing selected unwanted frequencies.[2]

### 3. *Shaping Input Signals*

WD next argues that that Convolve failed to show "shaping input signals" as required by the claim language. WD contends that because the tuning parameters are allegedly set in a lab during development and do not change, running a seek algorithm using those parameters cannot suffice as a "transformation." It is entirely unclear to the Court what WD would consider a transformation, given that it also argues that filters and slew-rate limiting also do not necessarily suffice as a transformation. (*Id.* at 2-3.) Convolve presented testimony at trial that changing the parameters in question changes the shape of the input signal, and thus, there is a transformation. (Dkt. 590 at 6, citing 7/18/11 Aftn. Tr. at 39:15-40:4.) The Court finds that it was reasonable for a jury to accept Dr. DiEuliis' position regarding the "transformation" requirement, as well as the other evidence presented on this point, such as the testimony of multiple experts regarding slew-rate limiting.

### 4. *Method Claims 7 and 10*

WD next argues that "Convolve offered no evidence that Western Digital practiced [method claims 7 and 10.]" (Mot. at 13.)[3] Dr. DiEulliis did testify – in great detail – regarding how the code in WD drives "alters settings in the user interface for one of the seek time and the seek acoustic noise level of the data storage device." (7/18 Aftn. Tr. at 71:14-75:14.) Further,

---

[2] To the extent that WD's argument is additionally premised on the position that the claim requires Convolve to prove an **explicit and intentional** selection command, the Court has already rejected that position. (*See, e.g.*, Dkt. 211 at 29.)

[3] It is worth noting that all parties agree that this issue, standing alone, is a purely legal question that would have no impact on the damages award in this case. (*See* Dkt. 663 at 10 ("Hitachi and Western Digital agree with Convolve that the damages award should remain undisturbed if the Court grants JMOL only as to the direct infringement of claims 7 and 10 by Western Digital and Hitachi."))

Dr. DiEuliis cited a Western Digital testing document (which was also introduced as evidence in the case) showing WD's acoustic testing results for its drives both in "seek mode 3" and "seek mode 0". (*Id*.) The Court finds that a reasonable jury could have relied on Dr. DiEuliis' testimony, as well as the documentary evidence he cited, and concluded that WD did perform the "altering settings" step (as well as the other steps required by claims 7 and 10).

### 5. *Evidence as to Each Accused Product*

WD also argues that "Convolve never identified or established the products it accused of infringement." (Mot. at 13.) But Dr. DiEuliis testified that his analysis was based upon WD's *own categorization* of its accused devices. (*See, e.g*., 7/18/11 Aftn. Tr. at 106:14-109:1.) The Court finds that the jury's verdict on this point was reasonable.

### 6. *Claim Construction*

WD's final argument as to direct infringement is that the Court must grant JMOL of non-infringement because its prior claim construction rulings are incorrect. The Court disagrees, for the reasons set forth in its multitude of orders on claim construction and related issues.

**Indirect Infringement**

WD argues that in addition to direct infringement, this Court should also grant JMOL as to indirect infringement. Although the briefing is slightly disorganized on this issue, the Court observes three primary bases relied upon by WD as to inducement.

First, WD argues that there can be no inducement without an instance of direct infringement. However, WD goes on to argue "Convolve argues that Western Digital itself directly infringed. Although Western Digital disputes this, Western Digital cannot be the alleged direct infringer for inducement. Western Digital cannot induce itself, so Convolve's argument is nonsensical and erroneous." (Dkt. 596 at 6.) Of course, logic dictates that a party cannot be held liable for inducing its own infringement, but that is not the argument presented to the jury at trial.

In this case, Convolve alleged direct infringement by WD, and also alleged that WD induced infringement by Dell and end-users of WD hard drives. Contrary to WD's suggestion, there is no internal inconsistency in such an argument. For example, if each step of a given method is performed by a party, and then another party also performs each step of that method, both parties might be liable for separate acts of direct infringement. WD provides no legal or factual reason that the alleged direct infringement of Dell and the end-users of WD drives cannot serve as a basis for a finding of induced infringement as to WD, if the other requirements for induced infringement are met.

Second, WD argues that it lacked specific intent to induce because "Dell required Western Digital to provide the feature, not the other way around." (Id. at 7.) In essence, WD argues that because the allegedly infringing functionality was important to Dell, it could not have "encouraged" Dell's use of that infringing feature. Notably, WD provides no precedent for this bold assertion. The Court finds that the mere fact that Dell valued this feature does not mean that WD could not, by including a feature that had no meaningful use except to infringe, encourage Dell's use of that feature. On the contrary: WD's knowledge that Dell had use for the functionality in question, if anything, strengthens the specific intent prong of induced infringement.

Finally, WD argues more generally that Convolve simply failed to prove "that Western Digital specifically intended to cause direct infringement of the '473 patent." (Dkt. 596 at 7-8.) The Court disagrees, and notes that Convolve presented a plethora of evidence on this point. The jury was presented with evidence upon which they could reasonably conclude that WD possessed the requisite intent, including WD's possession of Convolve's offers to license the asserted patent, Convolve's various positions regarding precisely how the accused functionality

infringed, information regarding a prior lawsuit of a competitor with Convolve, and meeting minutes suggesting that WD was involved with a committee that explicitly discussed Convolve's patents and various infringement positions.

WD's argument that this Court should grant JMOL on contributory infringement is similarly flawed. WD presents a number of positions to the Court that were all rejected by the jury, primarily relying on its theory that "changing a drive out of quiet mode into performance mode increases seek acoustic noise and thereby increases the unwanted frequencies instead of 'reducing' them."[4] (Dkt. 596 at 8.) This argument is unavailing. The jury, when presented with the arguments as to this question of fact, made a determination that without the ability to change a drive from "performance" (or "normal") mode to "quiet" mode – which the Court assumes for the purposes of this hypothetical is infringing – the ability to change from "performance" (or "normal") mode to "quiet" mode is essentially non-functional and unsubstantial. The Court finds that this decision was entirely reasonable. *See, e.g., i4i Limited Partnership v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010) (affirming jury's decision that defendant engaged in contributory infringement, in light of evidence accused product's noninfringing use 'was not a practical or worthwhile use for the [consumers] for which the [accused device] was designed and marketed').

**Willful Infringement**

WD finally argues that this Court should grant JMOL on willful infringement. As noted above, Convolve presented a substantial amount of evidence upon which a reasonable jury could rely to find that WD disregarded an objectively high risk of infringement. Convolve responds to

---

[4] The Court observes that there may also be a substantial question regarding whether WD has identified the correct product/functionality to focus upon for its "substantial non-infringing use" analysis, but since the theory WD advances fails regardless, the Court does not address that issue.

WD's JMOL request by noting that several of the positions advanced by WD do not reflect evidence presented to the jury at trial. This Court agrees that non-evidentiary considerations such as WD's post-trial juror interviews[5] are not an appropriate basis for this Court to grant a JMOL, and notes that when presented with this issue, WD simply reurged the arguments in its original brief. (Dkt. 596 at 9-10.) The Court finds that the jury's finding in this case, based on the evidence actually submitted to it, had a legally sufficient evidentiary basis. Accordingly, a grant of JMOL on willful infringement is inappropriate here.

For the reasons set forth above, the Court holds that the jury's finding that Plaintiff met its burden of proving infringement was reasonable and supported by substantial evidence. Defendant WD's motion for judgment as a matter of law on the grounds that the asserted claims are not infringed is DENIED.

---

[5] (As one example.) *See, e.g.*, Mot. at 25.

## CONCLUSION

Having found that Defendant is not entitled to judgment as a matter of law on the grounds raised in its motion and are not otherwise entitled to a new trial, WD's Renewed Motion for Judgment as a Matter of Law on Non-Infringement (Dkt. No. 570, filed August 19, 2011) is **DENIED**.

**SIGNED this 11th day of February, 2015.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE